UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GULF MARINE EQUIPMENT, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 05-6684** |
| **C & G BOAT WORKS, INC.** | **SECTION: "K"(2)** |

### ORDER AND REASONS

Before the Court is the Motion for Summary Judgment (Rec.Doc.No. 22) of Defendant C&G Boat works, Inc. ("C&G") seeking dismissal of all claims of Plaintiffs Gulf Marine Equipment, Inc. ("Gulf Marine").

### I. BACKGROUND

On August 12, 2002, Gulf Marine and C&G entered into a contract whereby Gulf Marine, as a broker, would receive a percentage of each contract of new construction it procured for C&G. *See* Mot. Summ. J., at p. 1 (Rec.Doc.No. 22). C&G explicitly refers to this agreement as a brokerage contract, while Gulf Marine refers to the agreement as a business development plan. *See* Opp. Mot. Summ. J., at p. 4 (Rec.Doc.No. 30). Gulf Marine drafted the agreement with

1

no specific term or duration. *Id.*, at p. 2. The agreement read as follows:

> This letter shall serve as our agreement regarding the fee to be paid to Gulf Marine for new construction business development with the following companies and people:
>
> 1. Rigdon Marine, Larry Rigdon
> 2. Trico Marine, Charles Hardy
> 3. Candy Fleet, Kenny Nelquin
> 4. Ekstein Marine, Pat McDaniel
> 5. Isls Mujeres Ferries, Jose' Mongana
>
> It is agreed that a fee of two percent (2%) of the gross billings on each contract with the above listed companies shall be paid to Gulf Marine in consideration for the Gulf's sales efforts on behalf of C&G. This fee shall be earned at the signing of the contract and due within 5 days of C&G's receipt of payment.

*Id.*, Exhibit 1.

On August 12, 2003, C&G allegedly terminated the agreement indicating that no contracts had been secured by the brokerage contract, and the termination was to be effective immediately. *Id.*, Exhibit 2. In November 2004 and thereafter, C&G entered into various construction contracts with Rigdon Marine. Gulf Marine contends that it is owed a brokerage fee on these Rigdon Marine contracts, while C&G argues that the brokerage contract had been terminated and/or that Gulf Marine was not the procuring cause for the Rigdon Marine contracts and is therefore not entitled to the brokerage fee.

## II. LEGAL STANDARD

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment. Fed. R. Civ. P. 56(e). Rather, the non-movant must come forward with "specific facts" that establish an issue for trial. *Id*.

When deciding a motion for summary judgment, the Court must avoid a "trial on the affidavits." *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the

evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact. *Id*. To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed." *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

### III. ANALYSIS

The question before the Court is whether Gulf Marine is entitled to a brokerage fee under its August 12, 2002, brokerage contract with Defendant C&G for the construction contracts between C&G and Rigdon Marine. Defendant brings the instant motion for summary judgment arguing that the Gulf Marine was not the procuring cause for the contracts between C&G and Rigdon Marine. Plaintiff responds that the August 12, 2002, had not been terminated, and therefore, Gulf Marine was entitled to its brokerage fee for the Rigdon Marine contracts.

*A.    Termination*

Because the instant matter involves the exercise of subject matter jurisdiction based on diversity, the Court must apply the substantive law of Louisiana. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Musser Davis Land Co. v. Union Pacific Resources*, 201 F.3d 561, 565 (5th Cir. 2000).

Under Louisiana law, a contract with no specified duration may be terminated at the will

of either party.[1] *See Gulf South Marine, Inc. v. American Standard,* Inc., 1998 WL 373408, at *5 (E.D. La. July 2, 1998) (Vance, J.) (preferred supplier agreement with indefinite term could be terminated at will with reasonable notice) ; *Motichek v. Buck Kreihs Co., Inc.*, 958 F.Supp. 266, 267 (E.D. La. Nov. 18, 2006) (Fallon, J.) (employment agreement of indefinite term could be terminated at will).

In this case, it is undisputed that on August 12, 2003, Janson Graham of C&G sent a letter Chalin O. Perez of Gulf Marine terminating the August 12, 2002, brokerage agreement. While the termination letter indicates that no contracts had been secured under the August 12, 2002, agreement, Gulf Marine suggests that C&G entered into contracts with Rigdon Marine for six vessels. *See* Opp. Mot. Summ. J., at p. 3 (Rec.Doc.No. 30); *see also* Mot. Partial Summ. J., Uncontested Material Facts (Rec.Doc.No. 21). Gulf Marine does not indicate when these contracts were entered relative to the termination of the August 12, 2002, brokerage agreement. However, C&G contends that the contracts in dispute involving six vessels designated as Hull Nos. 74, 75, 76, 82, 83, and 84, were entered into in November 2004, with negotiations running back to June 2004. *See* Statement of Uncontested Material Facts, at ¶ 7 (Rec.Doc.No. 36).

Gulf Marine offers no legal support suggesting why the termination of the contract was improper, or any case law that suggests why brokerage law would supersede Louisiana Civil Code art. 2024. Thus, the Court finds that the August 12, 2002, brokerage contract was terminated by virtue of the letter sent by Mr. Graham dated August 12, 2003.

However, it is without question that if Plaintiff were the procuring cause of the C&G –

---

[1] "A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party." LA. CIV. CODE ANN. ART. 2024 (2007).

Rigdon Marine contracts, the termination of the brokerage agreement would not prevent Plaintiff from recovering brokerage fees. Termination, though, would still be relevant as it is evidence of whether or not Plaintiff was the procuring cause of the contracts.

### B.     *Procuring Cause*

The next question before the Court is whether Gulf Marine was the procuring cause of the C&G – Rigdon Marine contracts. A broker is entitled to an agreed commission when he is the procuring cause in bringing about the sale. *McLeod v. L & L Oil Co.*, 147 So.2d 241 (La. App. 4th Cir. 1962); The broker is considered the procuring cause of sale if he brings the parties together, even though the parties conduct the final negotiations themselves and the broker does not have an exclusive-agency agreement. *Dickerson v. Hughes*, 370 So.2d 1301 (La. App. 3rd Cir. 1979).

> As used in that branch of law relating to brokers' commissions, the terms "procuring cause," "efficient cause," and "proximate cause" have substantially, if not quite, the same meaning and are often used interchangeably. Procuring cause has been defined as a cause originating or setting in motion a series of events which, without break in their continuity, result in the accomplishment of the prime object of the employment of the broker, which may variously be a sale or exchange of a principal's property, an ultimate agreement between the principal and a prospective contracting party, or the procurement of a purchaser who is ready, willing, and able to buy on the principals terms.

*Orleans Title Ins. Agency, L.L.C. v. R. Alan Bartlettm Inc.*, 811 So.2d 1126 (La. App. 4 Cir. 2002) (*quoting Creely v. Leisure Living Inc.*, 437 So.2d 816 (La. 1983).

C&G cites *Gulf Coast Marine, Inc. v. Cheramie*, 317 F.Supp. 867 (E.D. La. Oct. 28,

1969). In *Cheramie*, the court looked to the circumstances surrounding the sale of two vessels, with special focus on the extent to whether the putative broker facilitated the sale of the vessels.[2] The court held that the plaintiff broker was not the procuring cause of the sale, and he was not entitled to brokerage fees because he "failed in an attempt to effect a sale made afterwards by the principal or another broker to the person or company to whom the broker tried and failed to sell the property." *Cheramie*, 317 F.Supp. at 868 (*citing Ford v. Shaffer*, 143 La. 635, 636, 79 So. 172 (1918). The court noted that no brokerage fees were due despite the putative broker having introduced the contracting parties. *Id.*

C&G offers deposition testimony of Larry Rigdon, wherein Mr. Rigdon claims that he awarded the contracts to C&G because he knew Janson Graham and Mickey Cook of C&G, and held them in high regard. *See* Mot. Summ. J., Exhibit 4 (Rec.Doc.No. 22). Mr. Rigdon said that "Cop Perez had had no involvement with me or Rigdon Marine in any respect since early 2003." *Id.*, at p. 14.

Gulf Marine offers no evidence suggesting Mr. Perez did anything to facilitate the C&G - Rigdon Marine contracts that were entered into in November 2004. Rather, Plaintiff offers only evidence of a relationship between Mr. Perez and the contracting parties, which is attenuated at best from the construction contracts at issue. Specifically, Plaintiff offers the affidavit of Mr. Perez, who affirms that he brought the contracting parties together by getting C&G on Rigdon Marine's bid list. *See* Reply, Exhibit Affidavit, at ¶ 26 (Rec.Doc.No. 32).

---

[2] Although brokerage fees were not awarded in *Cheramie*, the case might stand for the proposition that brokerage fees could be due despite termination of the brokerage agreement considering that the *Cheramie* court focused on the procuring cause issue rather than the termination issue.

However, as was noted by Defendant during oral argument held before the Court on January 10, 2007, C&G was not chosen for certain bids it competed for at that time, as they went respectively to Bollinger and Bender. Moreover, Defendant indicated that no other bids contemplated by Rigdon Marine went to C&G prior to November 2004. These facts illustrate that there is a salient "break in continuity" in the relationship between the Plaintiff and the prospective contracting parties given that Mr. Perez had no involvement with Rigdon Marine since early 2003. *See* Mot. Summ. J., Exhibit 4, at p. 14 (Rec.Doc.No. 22).

The Court finds that affidavit of Mr. Perez, which is the only evidence offered by Plaintiff, is not sufficient to create a genuine issue of material fact as to whether Plaintiff was the procuring cause of the contracts in dispute. The mere fact that Mr. Perez initially may have facilitated the relationship between C&G and Rigdon Marine is not tantamount to being the procuring cause of any contracts awarded by Rigdon Marine to C&G or any other party named in the August 12, 2002, agreement. Mr. Perez did not participate in or otherwise facilitate the awarding of the November 2004 contracts. His actions were both temporally attenuated and causally unrelated to the C&G–Rigdon Marine contracts such that there is no genuine issue of material fact as to whether he was the procuring cause.

These facts coupled with the fact that the brokerage relationship had been explicitly and validly terminated by C&G justifies the Court in finding that Plaintiff was not the procuring cause for the contracts at issue and Defendant is entitled to judgment as a matter of law. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec.Doc.No. 22) is hereby **GRANTED** and Plaintiff's action is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, on this  23rd  day of January, 2007.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**